J. JONES, Justice,
specially concurring.
I concur in the Court’s analysis and with its conclusion that imputed income may be considered by a county board in determining the indigency status of a person applying for medical assistance. In my mind, the all-inclusive language used by the Legislature in defining who is “medically indigent” and what “resources” are to be considered in making the determination, indicates what many observers of legislative efforts in this arena know to be the case. That is, the Legislature has made a number of efforts in recent years to tighten up the medical indigency statutes to reduce the taxpayers’ financial burden for indigent medical care. The legislative changes have attempted to make it more difficult to qualify and to place more of the financial burden upon those who apply for benefits. On the other hand, I do perceive an infirmity in the County Board’s calculation of the amount of income to impute to Megan Freeman and, while that infirmity was not raised as an issue on appeal in this case, it is a matter that should be considered in any future case of this nature.
With regard to the question of whether imputed income is to be considered in the medical indigency calculation, one first turns to the definition of medically indigent. As the Court notes, in the version of Idaho Code section 31-3502 in effect at the time this case arose, the Legislature defined such a person as one who “does not have income and other resources available to him from *592 whatever source” sufficient to pay for the medical care. Income, therefore, is obviously a resource. The Legislature did not speak of past income, future income, current income, imputed income, or any other specific type of income, but spoke of income in general, “from whatever source.” In defining “resources,” the Legislature set out a nonexhaustive list of assets — “tangible or intangible, real or personal, liquid or nonliquid, including, but not limited to” — and, after listing several specific items, included “any other property from any source.” The Legislature went on to state that resources “shall include the ability of an applicant and obligated persons to pay for necessary medical expenses over a period of up to five (5) years.” These definitions show the Legislature intended that in making the determination as to whether an applicant was qualified for assistance, he or she would have to place on the table all assets available to him or her, including any income obtainable within the ability of the applicant in the ensuing five years.
If one were not satisfied that the language, alone, would lead to the conclusion that imputed income must be counted, one can drawn an analogy to employment or personal injury cases in which a person is seeking to recover future income. When courts instruct juries on what may be recovered, they do not (unless the defendant drops the ball and forgets to plead mitigation of damages) allow recovery of all income that the plaintiff might have expected to receive in the future but for the defendant’s wrongful conduct. The courts expect plaintiffs to mitigate their damages — to do the best they can to obtain work and reduce the amount of lost earnings that must be replaced by the defendant. It is certainly not a stretch to believe that the Legislature intended medical indigency applicants who have the ability to work and to obtain employment to try to reduce the financial burden on taxpayers. To relieve applicants of any obligation to assist in paying their medical bills from future earnings would seem to be contrary to what the courts and the Legislature generally expect.
Another thing that the courts generally figure into the equation in making lost income calculations is the availability of jobs in the local market. If a person can’t get a job, even if able to perform certain work, imputation of income may not be reasonable. In looking at the County Board’s Amended Findings of Fact and Decision on Remand, the Board states that “Megan Freeman is capable of working in a full-time minimum wage job,” but does not indicate whether or not such a job is available in the locality. Perhaps it was assumed at the time that she would have no difficulty in finding a job. However, with the current economic climate and scarcity of jobs, the chances of obtaining employment and income, imputed or otherwise, appears to be rather slim. If no job is available to the applicant, it hardly seems appropriate to impute any income.
'While any imputed income might be speculative in nature, given the ebb and flow of the job market, this does not present a hindrance to courts or juries in making the calculation in lost income cases, which use the best evidence available. It is not clear that either party submitted evidence to the County Board regarding the availability or nonavailability of jobs in the area, but it would certainly be a relevant factor for parties to present and for a county board to consider. Neither party raised the issue in this appeal so the issue is not before us for decision. However, it would certainly be a factor that I would find to be important in any future case of this nature that might come before the Court.